# CHARLESTON.

### SHRADER *v.* GARDNER.

Submitted June 11, 1910.   Decided April 23, 1912.

MORTGAGES—*Foreclosure—Restraining Sale.*

> A demand for unliquidated damages for breach of covenant of warranty of land is not ground to enjoin a sale of land for debt under a deed of trust.

Appeal from Circuit Court, Hancock County.

Bill by John Shrader against William P. Gardner and others. Decree for defendants, and plaintiff appeals.

*Affirmed.*

*O. S. Marshall,* for appellant.

*E. A. Hart,* for appellees.

BRANNON, PRESIDENT:

William P. Gardner made a deed conveying to James E. McDonald certain land in Hancock county. In this deed we find a clause reading as follows: "Subject however to a pipe line lease to the Ohio Valley Gas Company and Ruth M. Croxall which said second party assumes and receives all benefits and rentals derived therefrom." At the time of the execution of that deed McDonald made a deed of trust conveying the same land to William Croxall to secure to Gardner payment of $7,500, a part of the purchase money which McDonald agreed to pay Gardner for the land. Later McDonald conveyed the same land to John Shrader. The covenant of warranty in this deed

excepted said deed of trust, so that Shrader held the land expressly subject to the deed of trust. Later the trustee under the deed of trust gave notice of sale of the land for the payment to Gardner of the purchase money due him from McDonald, when Shrader filed a bill of injunction to stop the sale. The injunction was dissolved, and Shrader obtained the appeal now in hand.

The bill of injunction alleged in general terms that various payments on the Gardner debt had been made by McDonald, and other payments by him, and that Gardner had received money rentals from the Ohio Valley Gas Company, and that such payments and rentals had fully discharged the debts. The bill made this general charge, without any specification of amounts or dates of payments. The bill is bad for this, I would say. Gardner filed an answer flatly denying that the debt had been paid, but admitting numerous payments, giving amounts and dates, and averring that a large sum specified yet remained unpaid on his debt, and denying that he had ever received a dollar for rentals from the gas company. This answer was verified by affidavit. No replication to this answer. For that reason, and for the reason that the answer denies all the material allegations of the bill on which the injunction rests, and there is no proof of them, other than the affidavit to the bill, under law the dissolution was proper.

But there is another reason justifying such dissolution. Shrader claims in his bill that Gardner received rental from the gas company. As just stated the answer denies this, and the allegation is fruitless because, first, the answer is not replied to; second if it had been, there is no proof of it. But when we examine the instrument relating to the pipe line lease from Gardner to the Ohio Valley Gas Company we find that it stipulates for no money rental to Gardner. In consideration of thirty cents per lineal rod Gardner granted to the gas company an easement to lay a pipe line through this land to convey gas. This was ten years before the conveyance by Gardner to McDonald, and of course that thirty cents per rod had been paid, and the clause in the deed from Gardner to McDonald quoted above saying that the conveyance was subject to the pipe line lease had no reference to that money. Further, it is not rental.

The pipe line lease provides for no money payments for rentals or for any cause, except the thirty cents per rod. The fact must be taken to have been known by McDonald, as well as Shrader, because they were put upon inquiry and given notice by that clause in the deed from Gardner. It appeared in their chain of title. The instrument constituting the pipe line lease provided that Gardner should have right to sufficient gas of the pipe line for use in one house. Gardner transferred this right to Rigby years before the land was conveyed to McDonald. McDonald did not convey this right to Shrader in words. Then the question comes, has Shrader any right to it? Does the warranty extend to it? Is there a covenant that he shall have the benefit as appurtenant to it, or as a covenant running with the land? I scarcely think so. It is not mentioned in Shrader's deed. It cannot be an appurtenance. That is a thing belonging to and going with the transfer of a principal thing; used with, dependent upon that thing. 3 Cyc. 565. Essential to it, used with it. *Com.* v. *Sanders,* 5 Leigh 751. A thing will not pass as appurtenant, unless essential to the main thing. 2 Am. & Eng. Ency. Law 522, note; 1 Words & Phrases 478. For a covenant to run with land it must be a grant of it or an interest in it. *Hurxthal* v. *Boom Co.,* 53 W. Va. 87. We must note that the contract between Gardner and the gas company does not grant or covenant for right to use gas in a residence situate on the land, as gas leases generally do. It is not a right limited to the land. It is not a lease to take gas from the land. It gives no such right. It simply grants right to pass gas from other lands by pipe through this land. Gardner could use the gas on any land. It is a personal right to him. As before stated, Shrader's deed does not mention this gas right. It is a right not issuing out of the land. But we need not, and do not, decide this question whether his deed gives any right to the gas; for if we say that the right is guaranteed by the covenant, or belonged to the land, then I say that McDonald conveyed that right by the deed of trust along with the land to secure Gardner's debt, and I cannot see how he can come in and claim against that deed of trust when he yet owed the debt. It would be a subject conveyed by that deed of trust. But aside from that. If Shrader or McDonald would be entitled to that gas right, what

would be the character of that right? If anything, it would be an action of damages for breach of warranty, a collateral matter, a claim for unliquidated damages, which could not be set off against a deed of trust by way of injunction. Must the trustee wait until unliquidated damages shall be liquidated? A mortgagee cannot discharge the mortgage debt by setting off against it a personal demand for unliquidated damages. 27 Cyc. 1392. They cannot be set off against a deed of trust. *Cleaver* v. *Mathews,* 83 Va. 801, 3 S. E. 439; *Robinson* v. *Hogshead,* 3 Leigh 667. This principal is approved in the opinion in *Roger* v. *Kain,* 5 Leigh 606. I find such to be the general law. High on Injunction, sec. 444, says: "And the fact that the mortgagor has unliquidated demands against the mortgagee which he desires to set off against the indebtedness secured by the mortgage will not warrant an injunction against a sale under a power contained in the mortgage, since the rule is regarded as well settled that unliquidated damages can not be pleaded by way of set-off to proceedings in equity."

We affirm the decree.

*Affirmed.*